NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
JOANNE GANTT,                          :
                                       :
    Plaintiff,                         :          Civ. No. 04-5038 (SRC)
                                       :
    v.                                 :          **MEMORANDUM OPINION**
                                       :
JO ANNE B. BARNHART,                   :
COMMISSIONER OF SOCIAL                 :
SECURITY,                              :
                                       :
    Defendant.                         :
_____:

**Chesler, District Judge**

    This matter comes before the Court upon the appeal of Plaintiff, Joanne Gantt ("Gantt"), of the final decision of the Commissioner of Social Security ("Commissioner") determining that she is not eligible for Social Security Disability Benefits under the Social Security Act.  This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument pursuant to L. Civ. R. 9.1(b), **denies** Plaintiff's appeal.

## I.  BACKGROUND

    Gantt is a 50 year old woman with a high school education.  (R. at 13.)  She is a widow and mother of one son, Gregory Gantt, who was born in 1988.  (Pl. Br. at 8.)  She stopped working at her job as a Technical Service Manager at Pepsi Cola on September 6, 2000 due to anxiety disorder and depression.  (Id. at 8.)  Gantt initially filed applications for disability insurance benefits and Supplemental Security Income ("SSI") benefits on December 31, 2001,

alleging disability as of September 6, 2000 as a result of her anxiety disorder and depression.  (R. at 13.)  These claims were denied initially, and again upon reconsideration.  (Id.)

On February 25, 2004, with representation of counsel, Gantt testified at a hearing before Administrative Law Judge Suanne S. Strauss ("ALJ").  (Id.)  At the hearing, the ALJ was presented with the testimony of Gantt, as well as the medical reports of various doctors who examined and treated her.  According to Gantt, prior to leaving her job in September 2000, she had been depressed due to problems with her immediate supervisor.  (R. at 99.)  This depression manifested itself into a debilitating panic attack which left her "immobilized and helpless."  (Id.)  Since then, she claims that she is completely unable to function, subject to panic attacks, and suffering from "paralyzing agoraphobia" leaving her unable to return to work.  (Id.)

The ALJ noted that there is no evidence that Gantt has returned to work since September 2000 (id. at 14), but has received treatment and been examined by various doctors, whose reports were presented to the ALJ.  Gantt started therapy on September 6, 2000 with Dr. Richard Lee Fort to treat her condition.  (Id.)  This treatment continued, every two to four weeks, until Dr. Fort's untimely death in March 2001.  (Id.)  As a result of Dr. Lee's death, Gantt was unable to present any of Dr. Lee's reports, notes, or records regarding her claims.  (Pl. Br. at 10.)

Following Dr. Lee's death, Gantt was treated or examined by a number of other medical professionals.  The medical records considered by the ALJ include an August 2001 evaluation by Dr. Edward M. Zehler (R. at 98-103), a June 2002 evaluation by Dr. Michael Block (id. at 126 - 28), a June 2002 psychiatric review and mental residual functional capacity assessment by Dr. D. Fugate (id. at 129 - 46), and the handwritten notes and February 2004 evaluation of Gantt's treating physician, Dr. Robert C. Bransfield (id. at 147-163).  At the time of the hearing, Gantt

testified that she was currently taking Effexor XR, Vistaril, and Valium to treat her condition. (<u>Id.</u> at 172.)

     The ALJ also heard testimony from vocational expert Mr. Gary Young.  (<u>Id.</u> at 183.)  Mr. Young testified that a person capable of performing simple, repetitive work, without any sustained public contact, could perform all of the medium jobs, 60% of the light jobs, and 80% of the sedentary jobs as recognized by the Commissioner in the Medical Vocational Guidelines. (R. at 185.)

     In a decision dated April 19, 2004, the ALJ concluded that "although the claimant is unable to perform her past work, there is other work existing in significant numbers in the national economy that the claimant can perform.  Therefore, she is not 'disabled' within the meaning of the Social Security Act at any time through the date of this decision."  (<u>Id.</u> at 14.)

     The decision of the ALJ was reviewed and affirmed by the Appeals Counsel on August 27, 2004. (<u>Id.</u> at 4.)  Thereafter, Plaintiff filed the instant action seeking review of the Commissioner's denial of disability benefits, claiming that the decision of the ALJ was erroneous and clearly against the weight of the evidence presented.  (Pl. Br. at 6-7.)  The appeal is fully briefed and before this Court for consideration.

## II.  DISCUSSION

<u>A.  Standard of Review</u>

     It is well settled that the Commissioner's decision as to questions of fact are conclusive before a reviewing court if they are supported by "substantial evidence in the record."  42 U.S.C. § 405 (g), <u>Knepp v. Apfel</u>, 204 F.3d 78, 83 (3d Cir. 2000).  "Substantial evidence" means more than "a mere scintilla."  <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir. 1999) (quoting <u>Ventura v.</u>

Shalala, 55 F.3d 900, 901 (3d Cir. 1995)).  "It means such relevant evidence as a reasonable mind might accept as adequate."  Id.  If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001);  see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

The Third Circuit has made it clear "that determination of the existence vel non of substantial evidence is not merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence."  Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) (emphasis in original).  In reaching a conclusion that a claimant is capable of performing work, the ALJ must analyze all the evidence and explain the weight the ALJ has given to probative exhibits. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  As the Third Circuit has noted, access to the ALJ's reasoning is essential to a meaningful court review.  Fargnoli, 247 F.3d at 42.  Nevertheless, a District Court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

B.  Standard for Awarding Benefits Under the Act

An individual may not receive disability insurance benefits under the Act unless he or she first meets statutory insured status requirements.  See 42 U.S.C. § 423, Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002).  In order for a claimant to be considered disabled, he or she must be able to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

4

months." 42 U.S.C. § 423 (d)(1)(A).  Thus, a claimant is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423 (d)(2)(A).

To demonstrate that a disability exists, a claimant must present evidence that his or her affliction "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques."  42 U.S.C. § 423 (d)(3).  Thus, an individual's subjective complaints are not enough to satisfy this threshold for establishing a disability.  Furthermore, the claimant bears the burden of proving the existence of the alleged disability.  42 U.S.C. § 423 (d)(5)(A).

In accordance with the Act, the ALJ must undertake a five-step evaluation process in order to review a claim for disability insurance benefits.  See 20 C.F.R. § 404.1520, Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a).  If the claimant is working and the work is substantial gainful activity, the application for disability benefits is automatically denied.  See 20 C.F.R. § 404.1520(b).  If the claimant is not employed, the ALJ proceeds to step two and determines whether the claimant has a "severe impairment" or "combination of impairments."  20 C.F.R. § 404.1520(c).  A claimant who does not have a "severe impairment" is not disabled.  Id.  Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to those impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listing").  If so, the claimant is conclusively presumed to be disabled,

and the evaluation ends.  See 20 C.F.R. § 404.1520(d).

If, however, the impairment does not meet or equal a listed impairment under the Listing, the ALJ proceeds to step four, which requires a determination whether the limits imposed by claimant's impairment ("Residual Functional Capacity" or "RFC") prevent the claimant from returning to the work claimant performed in the past ("Past Relevant Work" or "PRW").  See 20 C.F.R. § 404.1520 (e).  If the claimant is found capable of performing his PRW, the claimant is not disabled.  Id.  If the claimant is no longer able to perform his PRW, the evaluation must continue to the last step.

The fifth and final step in the evaluative process requires a determination of whether the claimant, with their RFC, is capable of performing some other work available in the national economy.  In this last step, the burden shifts to the Commissioner to show that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity."  Plummer, 186 F.3d at 428 (citing 20 C.F.R. § 404.1520(f)).  Benefits are denied if work exists in the national economy in which the claimant could engage given the above-listed factors.  Thus, entitlement to benefits is dependent upon a finding that the claimant's impairments render them incapable of performing his or her PRW or some other type of work in the national economy.

C.  Plaintiff's Appeal

On appeal, Gantt makes five arguments.  The Court will address them in turn.  Gantt's challenge to the ALJ's findings is based on the following claims: (1) the ALJ erred in determining that Gantt's impairments do not meet or equal a listed impairment under 20 C.F.R.

6

§404.1520; (2) the ALJ's reliance on Gantt's sporadic alcohol consumption was misplaced, and an abuse of discretion by the ALJ; (3) the ALJ committed an abuse of discretion by failing to accord sufficient weight or credibility to the opinion of Gantt's current psychiatrist, Dr. Bransfield; (4) the ALJ erred in determining that Gantt's subjective complaints were not fully credible; and (5) the ALJ erred in determining that Gantt is able to perform other work that exists in significant numbers in the national economy.  (Pl. Br. at 6-7.)

     i. The ALJ's determination that Gantt's impairments do not meet or equal a listed impairment under 20 C.F.R. § 404.1520 was supported by substantial evidence.

     The ALJ determined that Gantt satisfied Step 1 of the analysis by concluding that there was "no evidence that the claimant worked since her alleged onset date."  (R. at 14.)  The ALJ also found that Gantt's depression, anxiety disorder, and panic disorder resulted in more than minimal limitations on her ability to perform gainful employment, thereby satisfying Step 2 of the analysis.  (R. at 15.)   As such, the ALJ proceeded to make a determination, meeting Step 3, as to whether those impairments meet or equal the list of impairments in Appendix I of sub-part P of Regulations No. 4 of the Code of Regulations.  20 C.F.R. § 404.1520(3).  If a claimant establishes that they suffer from one of the listed impairments, disability is presumed without further inquiry.  Plummer, 186 F.3d at 428.  The burden, however, of showing that a mental impairment matches a listing or is equal in severity to a listed impairment, rests with the Plaintiff.  Burnett v. Comm. of Social Security, 220 F.3d 112, 120 FN 2 (citing Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992)).

     The ALJ concluded that Gantt's impairments did not constitute a "marked limitation in two areas of functioning or one extreme limitation in one area of functioning" to meet the Part B

requirements, and that "there is no evidence that the claimant's mental impairments meet the Part C criteria."  (R. at 15.)  Plaintiff asserts that the ALJ's determination was erroneous, on the grounds that there are sufficient proofs in the record to establish that Gantt's impairments meet or equal a listed impairment in 20 C.F.R. § 404.1520 (d).  (Pl. Br. at 21.)

"While the mere presence of a mental disturbance does not automatically indicate a severe disability, it cannot be ignored by the ALJ."  Plummer, 186 F.3d, 434 (citing Bernal v. Bowen, 851 F.2s 297, 301 (10th Cir. 1988)).  In her analysis, the ALJ considered Listings 12.04 and 12.06 in analyzing whether or not Gantt's claims met the severity requirements of a Listed Impairment.  (R. at 15.)

Listing 12.04 is entitled "Affective Disorders." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.  The impairments that qualify as "affective disorders" are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation."  Id.  To meet Listing 12.04, Gantt must show that she suffers from an affective disorder that meets "[t]he required level of severity for these disorders [which] is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied."  Id.

Listing 12.06 is entitled "anxiety related disorders."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06.  "In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders."  Id.  To meet Listing 12.06, Gantt must show that she suffers from an "anxiety related

8

disorder" that meets "[t]he required level of severity for these disorders [which] is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied." Id. For both listings, the ALJ determined that Gantt's disorder failed to satisfy either the requirements of Part "B" or Part "C." (R. at 15.) Therefore, the ALJ concluded that neither the requirements for Listing 12.04 nor 12.06 were satisfied. (Id.)

The Part "B" criteria for both Listing 12.04 and 12.06 require at least two of the following:

> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. The Part "C" criteria for Listing 12.06 requires:

> Medically documented history of a chronic affective disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
> 1.    Repeated episodes of decompensation, each of extended duration; or
> 2.    A residual process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3.    Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A, § 12.04.

In her written decision, the ALJ articulated her findings related to the prongs of Part "B," concluding that Gantt had mild to moderate limitations in the activities of daily living and social functioning, mild limitations in concentration, and one non-alcoholic decompensation. (R. at

9

15.)   The ALJ also found "no evidence that the claimant's mental impairments meet the Part C criteria."  (Id.)

Plaintiff argues that, according to the evidence presented, "the requirement[s] in both A and B have been satisfied" (Pl. Br. at 22) and that, based on the record, Gantt "should, for all purposes, be considered 'housebound.'" (Id. at 24.)  To support this claim, Plaintiff cites to excerpts from the reports from Gantt's various doctors where Gantt recalls her episodic depression and panic attacks.  (Pl. Br. at 28-31.)  There are, admittedly, pieces in the record that could be taken as evidence to support both a finding that Gantt is not disabled, and a finding that she is.  In line with the appropriate standard of review, however, the Court is only concerned with whether there was substantial evidence supporting the ALJ's finding that Gantt was not disabled at Step Three in the evaluation process.

The Court finds that there was "'such relevant evidence as a reasonable mind might accept as adequate'" supporting the ALJ's determination.  Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994) (quoting Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989)).  Dr. Zehler's July 2001 analysis of Gantt's condition noted that "she is now able to socialize and travel" and that any "marked restrictions [due to her condition] have now cleared . . . [and] appear to be an episodic problem."  (R. at 102-03.)  Dr. Fugate's June 2002 evaluation of Gantt's condition indicated only moderate restrictions on the activities of daily living, social functioning, and maintaining concentration.  (R. at 143.)  This evaluation further noted that there were no repeated episodes of decompensation of an extended duration.  (Id.)

The ALJ further supported her conclusion by noting that Gantt remains the primary care giver for her teenage son (R. at 171-72), as well as engages in "normal social interaction of her

10

choice." (R. at 16.)  Gantt maintains a relationship with a "boyfriend" who helps her around the house and with her son (R. at 172-73), she occasionally goes to the store (R. at 178), maintains relationships with and talks to her friends online or on the telephone (R. at 179), and regularly participates in online group discussions seeking self-help for her situation.  (<u>Id.</u>)  Gantt also maintains her sobriety through AA, which the ALJ noted was a further indication that "she is not a complete recluse."  (<u>Id.</u>)

For the reasons noted above, the Court finds that there was sufficient relevant evidence to support the ALJ's determination and, therefore, the ALJ did not err in determining that the claimant's impairments do not meet or equal a listed impairment under 20 C.F.R. § 404.1520.

<u>ii.  The ALJ did not abuse their discretion in considering Gantt's sporadic alcohol consumption, since they placed no reliance upon it.</u>

The Plaintiff argues that the ALJ's determination that Gantt was not disabled was improperly based, at least partially, on the fact that she had sporadic instances of alcohol abuse. (Pl. Br. at 31.)  The opinion of the ALJ, however, is clear that any findings concerning Gantt's alcohol abuse were determined entirely in Gantt's favor.  The ALJ specifically noted that "for the purposes of this analysis, it has been presumed that [Gantt's] alcohol abuse is <u>not</u> a material factor contributing to disability."  (R. at 16 (emphasis added).)  Platintiff's arguments that the ALJ's decision was "clearly based" on a conclusion that Gantt's alcohol abuse was a contributing factor (Pl. Br. at 31), and that such a conclusion was erroneous and a "clear abuse of discretion" (<u>id.</u> at 32) are, therefore, without merit.

<u>iii. The ALJ's reasons for according the opinion of Dr. Bransfield "limited weight" are supported by substantial evidence.</u>

11

As part of her ruling, the ALJ considered the opinion of Dr. Bransfield, Gantt's treating physician, but gave his opinion "little weight."  (R. at 17.)    Plaintiff argues that the ALJ's discounting of the opinions of Dr. Bransfield was an "abuse of judicial discretion" and based on "erroneous conclusion[s]."  (Pl. Br. At 34-35.)

"Courts must give a treating physician's opinion controlling weight when the opinion is 'well-supported' by accepted medical techniques and consistent with 'other substantial evidence on the record.'" Desanctis v. Barnhart, 2005 WL 182718, *4 (Slip Copy 3d Cir. 2005) (citing 28 C.F.R. 416.927(d)(2)).  While an ALJ may not reject a treating physician's opinion outright without contradictory medical evidence, Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000), the ALJ need not defer to a treating physician's opinion about the ultimate issue of disability - since such determinations are reserved for the Commissioner.  20 C.F.R. § 416.927(e).[1]

Here, the ALJ did not reject or decline to consider Dr. Bransfield's opinion, but rather concluded that they were entitled to "little weight" in her deliberations.  (R. at 17.)  In his letter dated February 4, 2004, Dr. Bransfield opines that Gantt is "mostly non-functional 85% to 90% of the time" and concludes that her disability "prevents her from doing any substantial work" and that he did "not expect her condition to change in the near future."  (Id. at 163.)

Dr. Bransfield's assessment of Gantt's functionality is unsupported by his own treatment notes and inconsistent with other evidence evaluated by the ALJ.  Gantt had been seeing Dr.

---

[1]    Social Security regulations explain that "[g]enerally, we give more weight to opinions from . . . treating sources, since these sources are likely to be medical professionals most able to provide a detailed, longitudinal picture of . . . medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual's examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 404.1527(d)(2).

Bransfield, regularly, since February 25, 2002.  (Id. at 163.)  Dr. Bransfield's treatment notes for

this period are largely illegible and, for the most part, reflect brief sessions where he met with

Gantt for the purposes of adjusting her medication.  (Id. at 149-62.)  Dr. Bransfield's billing

records indicate that, for the twelve months between March 23, 2002 and February 26, 2003, he

had 6 sessions with Gantt to manage her medications, and only one thirty minute psychotherapy

session during this period.  (Id. at 147.)  This limited treatment regimen, coupled with the sparse

information in his treatment notes provides little support for Dr. Bransfield's conclusions.

Without sufficient information from Dr. Bransfield to support his assessment of Gantt's

functionality, the ALJ noted that Dr. Bransfield's evaluation was contrary to other evidence in

the record.  (Id. at 14-15.)  The August 2001 assessment of Gantt's condition by Dr. Zehler found

that Gantt "is no longer immobilized by panic disorder with agoraphobia.  She is now able to

socialize and travel."  (Id. at 101.)  In June 2002, Dr. Fugate's assessment of Gantt found her to

be "capable of performing simple, routine, work-related tasks" and subject only to "moderate

limitations" of her ability to relate to others and adapt to a work setting.  (Id. at 131.)  Such

findings are inconsistent with Dr. Bransfield's evaluation that Gantt was nearly completely non-

functional.  (Id. at 14.)

Dr. Bransfield's conclusion that Gantt was 85-90% non-functional was also further

undermined by Gantt's own testimony of her social interactions and activities.  (Id. at 14.)  Gantt

noted in her testimony that she continues to raise her teenage son, maintains numerous social

relationships, goes out with friends to the store, and was able to appear and coherently testify

before the ALJ without the assistance of her regular medications.  (Id. at 178-79, 182.)  Such

activities are, as the ALJ noted, are inconsistent with a person who is as functionally impaired as

Dr. Bransfield's opinion suggests.  (R. at 14.)

Finally, Dr. Bransfield's ultimate conclusion that Gantt was unable to do any substantial work was not entitled to the determinative weight that Plaintiff contends it should have been given.  (Pl. Br. at 34.)  A conclusion of whether a person is able to work or not embraces the ultimate issue of disability.  Such conclusions may be accorded "little or no weight" by the ALJ, since such a determination is one reserved for the Commissioner, and not the health care provider.  Beltran v.Barnhart, 2002 U.S. Dist. LEXIS 23605, *13-14 (E.D.Pa. 2002).

For the reasons noted above, the Court finds that there was sufficient relevant evidence to support the ALJ's determination that the opinion of Dr. Bransfield was entitled to limited weight in her assessment of the Plaintiff's disability.

　　　　iv. The ALJ's determination that the Plaintiff's subjective complaints were not fully credible was sufficiently supported by the evidence in the record.

The ALJ concluded that, based on the record, Gantt retains sufficient mental capacity to perform the basic work-related requirements and, therefore, her subjective complaints to the contrary were considered only "partially credible."  (R. at 17.)  The Plaintiff argues that this assessment of Gantt's credibility was "erroneous, unreasonable and arbitrary and must be reversed."  (Pl. Br. at 37.)  The ALJ, however, is empowered to evaluate a witness' credibility, provided that they offer some reason to discredit the witness' testimony.  Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).

In determining whether a disability exists, consideration is given to both subjective complaints, as well as objective medical evidence including statements or reports from treating or examining physicians or psychologists.  20 C.F.R. § 404.1529 (a).  A claimant's statements

14

regarding the intensity, persistence, and limiting effects of their symptoms are evaluated in relation to objective medical evidence, and other evidence, in reaching a conclusion regarding a claimant's disability.  Id. at § 404.1529(c).  While the ALJ must give serious consideration to a claimant's subjective complaints, even if they are not fully supported by objective medical evidence, they need not accept the credibility of these statements without question.  LaCorte v. Bowen, 678 F.Supp. 80, 83 (D.N.J. 1988).  The ALJ has discretion to "evaluate the credibility of a claimant and arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant."  Brown v. Schweiker, 562 F.Supp. 284, 287 (E.D.Pa.1983) (quoting, Bolton v. Secretary of HHS, 504 F.Supp. 288 (E.D.N.Y.1980)).

Here, the ALJ did not find Gantt's testimony fully credible, and factored this into her consideration of how much weight to attribute to Gantt's subjective complaints of panic attacks, depression, and functional limitations.  (R. at 17.)  The reasons for the ALJ's questioning of the credibility of Gantt's testimony was that, based on her evaluation of the entire record, she found that Gantt retained sufficient mental capacity to perform basic work activities.  (Id.)  Gantt's testimony of subjective complaints to the contrary were, therefore, not found to be fully credible.  (Id.)  There is sufficient evidence in the record to support the ALJ's determination that Gantt's condition may not be as restrictive as Gantt was claiming.

Gantt claimed that she suffers from permanent phobic anxiety with agoraphobia, she rarely leaves the house, and, on many days, she is unable to get out of bed.  (R. at 169-83.)  Dr. Zehler's August 2001 evaluation of Gantt, however, found that her depression, agoraphobia, and panic attacks were in remission and that she was, at that point, able to socialize and travel.  (Id. at

102.)  At the time of this evaluation, Gantt had been "dating for over one and one half years" and, at that time, maintained a nearly year-long relationship with a boyfriend.  (Id. at 100.)  Dr. Fugate's evaluation nearly a year later, in June 2002, found Gantt subject to no more than moderate limitations on her ability to socialize and work, and capable to perform simple, routine, work related tasks.  (Id. at 131.)  Gantt's own statements before the ALJ undercut her claims of being nearly completely non-functional due to her condition, as she noted that she continued to maintain numerous social relationships, act as primary caretaker for her teenage son, and managed to occasionally go out shopping with friends.  (Id. at 178-79.)

For the reasons noted above, the Court finds that the ALJ's determination that the Plaintiff's subjective complaints were not fully credible was sufficiently supported by evidence in the record.

        v. The ALJ's determination that the Plaintiff is able to perform other work that exists in the national economy was sufficiently supported by the evidence in the record.

Gantt neither asserted, nor did the record indicate that she suffered from any physical impairments that would limit her ability to perform the physical functions required for basic work.  (R. at 17.)  The ALJ concluded, therefore, that Gantt was able to perform a full range of exertional work, provided that the job required no sustained public contact and was limited to simple, repetitive work tasks due to her condition.  (Id.)  Gantt's employment history indicated that she held a series of positions that were classified as light,[2] skilled jobs.  (Id. at 184.)  Because

_____

        [2]        Light work is defined under federal regulations as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of

her condition limits her to simple, repetitive work tasks, Gantt is unable to return to her former job.  (Id. at 17.)

Since Gantt cannot perform her past relevant work, the burden shifts to the Commissioner to demonstrate that Gantt has residual capacity to do less demanding work, given her age, education, and work experience.  Griffin v. Sec. of Health and Human Svcs., 607 F.Supp. 405, 408 (D.C.Pa. 1985).  If there are jobs that the claimant can perform, then there is no disability. Id.

The ALJ considered the testimony of Mr. Gary Young, a vocational consultant, to evaluate Gantt's employment potential.  (R. at 183-85.)  The ALJ determined that Gantt was a younger individual,[3] with a high school education and past experience in skilled work, but no transferable skills.  (R. at 17.)  Such a person would not ordinarily be disabled under Rules 204.00, 203.29, 202.21, and 201.21.  20 C.F.R. Pt. 404, Subpt. P., App. 2.

Since Gantt's condition limits her to simple, repetitive tasks, and precludes her from being able to have sustained public contact, the ALJ consulted Mr. Young to determine whether

---

performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." Id.

[3]      Gantt was 49 years old at the time of the hearing before the ALJ.  (R. at 17.)  A 'younger individual,' for Social Security disability purposes, is anyone between ages 18 to 49. 20 C.F.R. Pt. 404, Subpt. P, App. 2.  For individuals over age 45, however, age is deemed a less advantageous factor for making an adjustment to other work than it may be for a younger individual.  Id.  Accordingly, the rules allow a finding of "disabled" for persons aged 45-49 who are "(i) Are restricted to sedentary work, (ii) Are unskilled or have no transferable skills, (iii) Have no past relevant work or can no longer perform past relevant work, and (iv) Are unable to communicate in English, or are able to speak and understand English but are unable to read or write in English." Id.

or not jobs that can accommodate such limitations exist in significant numbers within the national economy.  (R. at 184-85.)  Mr. Young testified that, even with these limitations, a person with Gantt's conditions would be eligible for all of the heavy jobs, all the medium jobs, 60% of the light jobs, and 80% of the sedentary jobs recognized by the Listing.  (Id. at 185.)

Where there is substantial evidence to support the hypothetical question upon which a vocational expert bases their opinion, the ALJ may rely on this opinion to demonstrate that jobs exist in the national economy which the claimant can perform.  Plummer, 181 F.3d at 431.  The Plaintiff notes that Mr. Young testified that, if Gantt's testimony were accepted as credible, she would not be able to work.  (Id. at 185)  The ALJ, however, found that Gantt's testimony was not entirely credible (id. at 17), so this part of Mr. Young's opinion was irrelevant to the ALJ's final conclusions.

For the reasons noted above, the Court finds that the ALJ's determination that the Plaintiff is able to perform other work that exists in the national economy was sufficiently supported by evidence in the record.

### III.  CONCLUSION

Accordingly, the Court finds that the decisions of the ALJ were supported by substantial evidence and the decision that the Plaintiff is "not disabled" is hereby affirmed.  Plaintiff's appeal is denied.

Dated: September 22, 2005

                    /s Stanley R. Chesler, U.S.D.J.

                    Stanley R. Chesler, U.S.D.J.

18